# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00498-CV

**CU Lloyd=s of Texas and Potomac Insurance Company of Illinois, Appellants**

**v.**

**Main Street Homes, Inc. and Main Street, Ltd., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GN102640, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING

This appeal arises from a dispute over insurance coverage between appellees Main Street Homes, Inc. and Main Street, Ltd. (together AMain Street@), and appellants CU Lloyd=s of Texas and Potomac Insurance Company of Illinois (together ALloyds@). Lloyds, Main Street=s insurance provider, refused Main Street=s request to defend Main Street in two suits brought against it. Following Lloyds= refusal, Main Street sued Lloyds, seeking, *inter alia*, a declaratory judgment that Lloyds had a duty to defend Main Street.[1] Main Street moved for partial summary judgment that its insurance policies contractually obligated Lloyds to defend it in the underlying suits. Lloyds also moved for partial summary judgment, arguing that there was no duty to defend because the underlying suits= pleadings did not allege an Aoccurrence@ and, alternatively, that the policies= business-risk exclusions applied. The district court granted Main Street=s motion and denied Lloyds=. The court then granted an agreed motion to sever, rendering the

---

[1] Main Street also sought monetary damages, attorney=s fees, and court costs.

duty-to-defend issue appealable. Lloyds appeals the district court=s grant of summary judgment in favor of Main Street and the denial of its own motion. We will affirm the district court=s judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Main Street, a general contractor, constructed residential homes in two subdivisions, Chimney Hills North in Austin and Ashford Park in Buda. At Chimney Hills, Main Street hired Professional Design Group (APDG@) to design foundations for the homes. Kevin and Denise Holiday purchased one of the homes, and subsequently observed structural defects in the home=s construction. The Holidays filed suit against Main Street as a result of alleged foundation defects.[2] The *Holiday* petition asserts that Main Street received warnings that the foundations of the Chimney Hills homes, as designed, were inappropriate for the subdivision=s soil conditions, and that Main Street disregarded the warnings and knowingly proceeded with construction. The Holidays seek damages for violations of the Texas Deceptive Trade Practices Act, fraud, breach of implied warranty, negligence, and fraudulent conveyance.

---

[2] *Holiday v. Main St. Homes, Inc.*, No. GN003243 (98th Dist. Ct., Travis County, Tex. Nov. 6, 2000).

At Ashford Park, Main Street subcontracted with PDG and another foundation engineering firm[3] for the design and construction of residential foundations. Several Ashford Park homeowners brought a suit similar to the Holidays=,[4] alleging that Main Street and PDG relied on an inaccurate soil survey, which resulted in deficient foundation designs that they knew were destined to fail. The *Armstrong* petition does not seek damages from Main Street for negligence, but does assert that the foundations= conditions are construction defects and structural failures as defined by the Texas Residential Construction Liability Act. *See* Tex. Prop. Code Ann. ' 27.001(2), (5) (West 2000).

Lloyds was Main Street=s insurance carrier from September 1998 to September 2000, the period in which the *Holiday* and *Armstrong* causes of action arose. During this time, Main Street was covered by two identically worded comprehensive general liability insurance policies (the Apolicies@).[5] ACoverage A,@ the applicable portion of the policies, insured Main Street for Abodily injury@ and Aproperty damage@ and provided that Lloyds would defend Main Street from suits brought against it.[6] Upon learning of the *Holiday* and *Armstrong* petitions, Main Street notified Lloyds, requesting that it provide a defense to

---

[3] For convenience, we will refer to the two foundation engineering firms as PDG.

[4] *Armstrong v. Main St., Ltd.*, No. GN003566 (98th Dist. Ct., Travis County, Tex. Dec. 13, 2000).

[5] The first policy, issued by Potomac to Main Street, was in effect from September 23, 1998, to September 23, 1999. CU Lloyd=s issued the second policy, which was effective from September 23, 1999, to September 23, 2000.

[6] The duty-to-defend language stated that the insurer would Apay those sums that the insured becomes legally obligated to pay as damages because of >bodily injury= or >property damage= to which this insurance applies@ and that A[w]e will have the right and duty to defend any >suit= seeking those damages,@ and that A[w]e may at our discretion investigate any >occurrence= and settle any claim or >suit= that may

the suits.  Lloyds declined on the basis that the petitions failed to allege claims covered by the policies.

Main Street then brought this suit.

---

result.@

Main Street moved for partial summary judgment on the grounds that the pleadings in the underlying petitions contained allegations of covered occurrences and allegations falling within the Aproducts-completed operations hazard@ clause of the policies.[7] Lloyds also moved for partial summary judgment, asserting that the policies did not require it to defend because the facts alleged in the underlying pleadings do not allege an Aoccurrence,@ and, in the alternative, that the policies=Abusiness risk@ exclusions negated coverage for faulty workmanship, thereby failing to trigger a duty to defend. The district court rendered partial summary judgment, granting Main Street=s motion and denying Lloyds=. In the summary judgment, the district court found that Lloyds had a duty to defend Main Street, which it breached, and that

---

[7] The policy includes a definitions section, which states in pertinent part:

> AProducts-completed operations hazard@ includes all Abodily injury@ and Aproperty damage@ occurring away from premises you own or rent and arising out of Ayour product@ or Ayour work@ except (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned.
> AYour product@ means: (a) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You; (2) Others trading under your name; or (3) A person or organization whose business or assets you have acquired . . . .

> AYour work@ means: (a) Work or operations performed by you or on your behalf; and (b) Materials, parts or equipment furnished in connection with such work or operations.

The definitions of Ayour product@ and Ayour work@ include:

> (a) Warranties or representations made at any time with respect to the fitness, quantity, durability, performance or use of Ayour product@ or Ayour work@]; and (b) The providing of or failing to provide warnings or instructions.

As used in the policies, Ayou@ and Ayour@ refers to Main Street.

Lloyds was obligated to reimburse Main Street for its defense costs. The parties then jointly moved to sever, requesting that these issues be made final and appealable. The district court granted the motion, and Lloyds brings this appeal.

**DISCUSSION**

When both sides move for summary judgment and the trial court grants one motion and denies the other, the appealing party may appeal both the prevailing party=s motion as well as the denial of its own. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). In such a situation, we review the summary-judgment evidence presented by both sides and determine the questions presented. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). If the pertinent facts are undisputed, we can determine the issues presented as a matter of law. *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 570 (Tex. App.CAustin 2001, no pet.). This Court may then either affirm or reverse and render. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988); *Tobin v. Garcia*, 316 S.W.2d 396, 400-01 (Tex. 1958). However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we will reverse and remand. *Coker v. Coker*, 650 S.W.2d 391, 394-95 (Tex. 1983). The parties do not dispute the pertinent facts; the issue in this case is whether those facts trigger Lloyds= duty to defend.

To determine an insurer=s duty to defend, Texas courts follow the Aeight corners@ rule. *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, *Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Texas Prop. & Cas. Ins. Guar. Ass=n v. Southwest Aggregates, Inc*., 982 S.W.2d 600, 604 (Tex. App.CAustin 1998, no pet.) (citing *American Alliance Ins. Co. v. Frito-Lay, Inc*., 788 S.W.2d 152,

**6**

153-54 (Tex. App.–Dallas 1990, writ dism=d)).  Pursuant to the rule, we consider only the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists, giving the allegations in the petition a liberal interpretation and resolving any doubt in favor of the insured. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex. App.–Austin 1999, no pet.) (citing *Merchants Fast Motor Lines*, 939 S.W.2d at 141).  ΑThe duty to defend is not affected by the facts of the case ascertained before, during, or after the suit.@  *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd=s Ins. Co*., 852 S.W.2d 252, 255 (Tex. App.–Dallas 1993, writ denied).  Nor do we consider the reliability of the allegations in the underlying pleadings.  *Id*.  If the underlying petition does not allege facts within the scope of coverage, the insurer has no duty to defend.  *Id*.  Once coverage has been found for any portion of a suit, an insurer must defend the entire suit.  *St. Paul Ins. Co. v. Texas Dep=t of Transp.*, 999 S.W.2d 881, 884 (Tex. App.–Austin 1999, pet. denied).  Therefore, to determine whether Lloyds has a duty to defend Main Street, we consider only the allegations in the underlying petitions and the provisions of the insurance policies.

**A.  Occurrence**

The applicable portion of the policies is Section I, Coverage A, which states:

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of Αbodily injury@ or Αproperty damage@ to which this insurance applies.  We will have the right and duty to defend any Αsuit@ seeking those damages . . . .

b.  This insurance applies to Αbodily injury@ and Αproperty damage@ only if:

     (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

     (2)   The "bodily injury" or "property damage" occurs during the policy period.

The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the policies do not define "accident."

"Accident," in the context of a general liability insurance policy, "include[s] negligent acts of the insured causing damage which is undesigned and unexpected." *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex. 1967). However, when the action taken is an intentional tort, there is no accident, regardless of whether the results are unintended or unexpected. *See Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). In *Trinity Universal Insurance Co. v. Cowan*, the court held that the unauthorized, purposeful copying of revealing personal photographs to show others was intentional, and therefore no accident, 945 S.W.2d 819, 827-828 (Tex. 1997), but reaffirmed that the definition of "accident" included "the negligent acts of the insured causing damage which is undesigned and unexpected." *Id*. at 828 (quoting *Orkin*, 416 S.W.2d at 400).

Recently, the court again addressed "accident" in an insurance-coverage context and stated that,

> an injury is accidental "if from the viewpoint of the insured [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by the insured, or would not ordinarily follow from the action or occurrence which caused the injury."

**8**

*Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999) (quoting *Republic Nat=l Life Ins*

*Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex. 1976)) (alteration in original). The *Lindsey* court observed

that Aboth the actor=s intent and the reasonably foreseeable effect of his conduct bear on the determinations

of whether an occurrence is accidental.@ *Lindsey,* 997 S.W.2d at 155. Furthermore, this Court has noted

that the failure of a petition to include the word Aaccident@ does not preclude the possibility that an accident

caused the damage. *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 729 (Tex. App.C Austin 2000, no

pet.).

Thus, if the tortfeasor=s acts are deemed intentionally harmful, there is no accident, therefore

no occurrence, no duty to defend, and no policy coverage. However, if intentionally performed acts are not

intended to cause harm but do so because of negligent *performance*, a duty to defend arises. *See*

*Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 729 (5th Cir. 1999).

Simply put, Lloyds= assertions are that the underlying petitions allege intentional conduct by

Main Street, and thereby, because of the eight-corners rule, deprive Main Street of insurance coverage.

The *Holiday* petition alleges that both a construction superintendent and Main Street=s

concrete contractor informed Main Street, before construction of the Chimney Hills homes, that the

foundation designs Awere totally inappropriate@ for the soil conditions. The construction superintendent had

the soil tested, revealing a higher plasticity index[8] than the designs anticipated. The petition contends that

despite Main Street=s knowledge of these test results, it constructed the homes pursuant to the original PDG

---

[8] A soil=s Aplasticity index@ describes the range within which the soil, due to water content, moves or changes its shape, thus behaving Aplastically.@ A higher plasticity index indicates a soil more prone to shifting and flexing.

post-tension slab design, and neither disclosed the warnings nor the results of the soil test to the homebuyers. A[T]he post tension slabs designed by . . . PDG were not sturdy and/or stiff enough to resist the differential movement of the expansive clay soils in the area,@ and Athe residence was not designed nor built in a good and workmanlike fashion . . . .@

We need not determine whether the *Holiday* petition alleges an intentional tort as the petition=s allegations against Main Street include allegations of negligence. *See Grapevine Excavation*, 197 F.3d at 730. Because at least one of the claims asserted in the *Holiday* petition potentially falls within the scope of coverage, Lloyds= duty to defend is triggered. *Id.* at 726; *St. Paul Ins. Co.*, 999 S.W.2d at 884.

The *Armstrong* petition alleges that PDG designed the Ashford Park foundations in accordance with a geotechnical investigation identifying the soil=s maximum plasticity index as 32. However, a *post-construction investigation* revealed a significantly higher plasticity index. Additionally, the *Armstrong* plaintiffs contend Main Street Awas aware, prior to the construction of the foundations . . . that the slabs as designed would be inadequate,@ and that Main Street failed to disclose this to the homebuyers. This knowledge is undisputed, the assertions continue, because some Main Street foundations at Chimney Hills had failed, and Main Street had previously filed suits against PDG for Ainadequate foundation designs.@

The *Armstrong* petition does not preclude coverage. The petition fails to allege facts that Main Street intentionally designed the foundations to fail. Conversely, the petition alleges that Main Street built the foundations at Ashford Park in reliance on a geotechnical survey of the area that Main Street received when it purchased the lots. Additionally, Main Street=s second survey, showing a higher plasticity

**10**

index, was conducted *after* the homes had been built in reliance on the earlier report. These allegations do not preclude damages due to an Aaccident,@ and therefore an Aoccurrence,@ rather than a result of an intent to construct defective foundations.

When construed liberally in favor of the insured,[9] the entirety of the pleadings= allegations, particularly those relating to Main Street=s potential liability for violations of the Texas Deceptive Trade Practices Act and the Texas Residential Construction Liability Act, does not restrict the *Armstrong* plaintiffs= to successfully prosecuting their suit only if they prove an intentional tort on Main Street=s part.

Lloyds directs this Court to *Hartrick v. Great American Lloyds Insurance Co.*, which held that a homebuilder=s failure to comply with its own implied warranties by not properly preparing the soil or constructing the foundation was intentional conduct, and therefore was not a covered Aoccurrence@ under the insured=s policy. 62 S.W.3d 270, 276-78 (Tex. App.CHouston [1st Dist.] 2001, no pet.). *Hartrick*, however, concerned a duty to indemnify, not a duty to defend. There, a jury found in favor of the insured builder on negligence and deceptive-trade-practices-act claims, while finding for the homeowner on breach-of-warranty claims. *Id.* at 273. On appeal, the court held that the insurer had no duty to indemnify, stating that A[b]ecause the judgment in the underlying case did not . . . award damages >caused by Aan occurrence[,]@= [the insurer] had no duty to indemnify [the insured] for the judgment in the underlying case.@ *Id.* at 278. Here, there is no trial or verdict in the underlying suits finding for or against the insured.

---

[9] *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, *Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Moreover, only the underlying pleadings and insurance policy may be examined to determine a duty to defend, and there is nothing in the underlying petitions to indicate that Main Street intentionally constructed the foundations to fail.

Lloyds also relies on this Court=s opinion in *Devoe*. 50 S.W.3d 567. There, however, we noted that the underlying petition did not Aallege any event or series of events that could be construed as an accident.@ *Id.* at 572. Rather, the Devoes alleged Aimproper and deficient workmanship and the failure to complete the home in the agreed upon time.@ *Id.* at 569. The *Holiday* and *Armstrong* petitions allege that the soil surveys on which the foundation designs were based were erroneous, resulting in damage to the homes. They allege that the designs proved faulty or inadequate and that Main Street knew the foundations would fail, but do not allege that Main Street failed to construct the foundations in accordance with PDG=s preconstruction designs. The allegations in the *Holiday* and *Armstrong* petitions differ from those in *Devoe* in that they do not assert claims restricted to shoddy workmanship. The petitions sufficiently allege facts that can be construed as an Aoccurrence.@

## B. Business Risk Exclusions

Insurance policies are contracts, and their construction is governed by the same rules of construction applicable to all contracts. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998); *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). In construing a written contract, the primary goal of the court Ais to give effect to the written expression of the parties=intent.@ *Balandran*, 972 S.W.2d at 741 (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). The court

**12**

should Aascertain the true intent of the parties as expressed in the instrument.@ *National Union*, 907 S.W.2d at 520 (citing *Forbau*, 876 S.W.2d at 133).

A written contract that can be given a definite or certain legal meaning is not ambiguous. *National Union*, 907 S.W.2d at 520; *Coker*, 650 S.W.2d 391, 393. If a contract is not ambiguous, the words used in the contract are to be given their ordinary meaning. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *see also Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979) (terms of insurance contract given Aordinary and generally accepted meaning@). However, if Athe language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous,@ and the construction that would afford coverage to the insured must be adopted. *National Union*, 907 S.W.2d at 520; *see also Balandran*, 972 S.W.2d at 741.

Without making specific arguments, Lloyds contends that Aone or more of the policies= >business risk= exclusions are triggered by the allegations in the underlying lawsuit.@ Generally, Lloyds contends that Athere is no coverage for faulty workmanship or for a contractor=s failure to perform his contract.@ Additionally, Lloyds argues that Athe business risk exclusions are designed to protect insurers from a contractor=s attempt to recover funds to correct deficiencies caused by the contractor=s questionable performance@ and specifically cites exclusions A.2.j.(5), (6), A.2.k., and A.2.l. as applicable to preclude coverage.

## 1. Exclusion A.2.j.(5)

The policies contain numerous exclusions to property-damage liability, including section A.2.j.(5), which states:

2.    Exclusions.  This insurance does not apply to:

  j.    Damage to Property

      AProperty damage@ to:

      (5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Aproperty damage@ arises out of those operations . . . .

Main Street posits that this exclusion should not apply, because Main Street is not presently Aperforming operations.@  The underlying petitions allege that the homebuyers purchased the homes *after* Main Street completed construction.  Giving the exclusion its plain meaning, the use of the present tense indicates that the exclusion applies to circumstances where the contractor or subcontractors are *currently* working on the project.  Words such as Aworking,@ Aare,@ Aperforming,@ and Aarising@ are not used to extend the policy exclusion to a home purchased after construction is complete.

In *Houston Building Service, Inc. v. American General Fire & Casualty Co.*, the court, interpreting a similarly worded exclusion, addressed the same argument as Lloyds asserts here.  799 S.W.2d 308, 311 (Tex. App.CHouston [1st Dist.] 1990, writ denied).  A janitorial service=s employees negligently applied linseed oil to wooden doors, damaging the property.  After the owner complained, the contractor made a claim under its general liability policy.  The insurer denied coverage, arguing that the policy=s business risk exclusions did not cover faulty workmanship.  On appeal, the court agreed and held that the exclusion did not apply because the janitorial service was operating under an existing contract; therefore, the work had not yet been completed.  Although the facts in *Houston Building Service* differ, the reasoning is applicable.  Since the underlying petitions indicate that Main Street had completed construction

**14**

and sold the homes to the homebuyers *before* the alleged damage resulted, the exclusion does not preclude Lloyd=s duty to defend Main Street.

## 2. Exclusion A.2.j.(6)

Lloyds also contends that business-risk exclusion A.2.j.(6) denies coverage for faulty workmanship. The exclusion states:

> 2. Exclusions. This insurance does not apply to:
>
> j. Damage to Property
>
> AProperty damage@ to:
>
> (6) That particular part of any property that must be restored, repaired or replaced because Ayour work@ was incorrectly performed on it.
>
> Paragraph (6) of this exclusion does not apply to Aproperty damage@ included in the Aproducts-completed operations hazard.@

Main Street argues that this exclusion Awould be applicable but for the fact that the policy contains an exception to this exclusion,@ the products-completed operations hazard. The products-completed operations hazard states the following:

> AProducts-completed operations hazard@ includes all Abodily injury@ and Aproperty damage@ occurring away from premises you own or rent and arising out of Ayour product@ or Ayour work@[10] except:
>
> (1) Products that are still in your physical possession; or

---

[10] *See* footnote 7, *supra*, for definitions of Ayour product@ and Ayour work.@

(2)   Work that has not yet been completed or abandoned.[11]

Main Street asserts that the exception to exclusion A.2.j.(6) applies because the claims Ainvolve: (1) property that was put to its intended use by the homeowners who purchased the homes, (2) property damage that occurred away from premises owned or rented by Main Street, and (3) [the claims] arise out of Main Street=s work.@ The underlying petitions support Main Street=s contention, because Main Street and its subcontractors worked on and completed the homes, which Main Street later sold to the plaintiffs. For these reasons, Lloyds= assertion that Main Street=s application of the products-completed operation hazard Afails to negate the application of exclusion A.2.j.(5)@is without merit.  Main Street completed and sold the homes before the alleged damages; therefore, the products-completed operations hazard exception is not applicable to A.2.j.(5), which contains language that refers to ongoing operations.

### 3. Exclusion A.2.k.

Lloyds also relies on Exclusion A.2.k. for the denial of a duty to defend.  This provision excludes coverage for A>[p]roperty damage= to >your product= arising out of it or any part of it.@  Lloyds argues that Main Street=s homes are its Aproducts,@and therefore it should preclude Lloyds=duty to defend.

---

[11]   The policy states that: A>[Main Street=s] work= will be deemed completed at the earliest of the following times: (1) When all of the work called for in your contract has been completed, (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site, (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.@

The term Ayour product,@ as stated in the policy includes Agoods or products . . . manufactured, sold, distributed, or disposed of . . . .@ The term also includes A[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of >your product,=@ as well as Aproviding or failing to provide warnings or instructions.@

Main Street responds that the definition of Ayour product@ does not apply to a building and its components. In support of its argument, Main Street relies on *Mid-United Contractors, Inc. v. Providence Lloyds Insurance Co.*, which interpreted the term as **Anot apply[ing] to the construction of [a] building because in ordinary language buildings are constructed or erected, not manufactured, and because any ambiguity in the policy language must be construed against the insurer and in favor of the insured.@** 754 S.W.2d 824, 826 (Tex. App.CFort Worth 1988, writ denied). We agree with the Second Court of Appeals= analysis.

**4. Exclusion A.2.l.**

Finally, Lloyds argues that Exclusion A.2.l. applies to preclude its duty to defend Main Street against the underlying suits:

2. Exclusions. This insurance does not apply to:

1. Damage to Your Work

   AProperty damage@ to:

   AProperty damage@ to Ayour work@ arising out of it or any part of it and included in the Aproducts-completed operations hazard.@

However, the policy provides that the exclusion does not apply Aif the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.@ Both the *Holiday* and *Armstrong* petitions allege that the property damage caused by the subcontractors who designed and constructed the foundations. Specifically, the *Holiday* petition alleges that: AMichael Alexander and PDG were hired by Main Street, Inc. to design foundations for the homes . . . .@ The *Armstrong* petition alleges that AMain Street contracted with two foundation engineering firms . . . to design the foundations in the subdivision.@ A plain reading of this exclusion in light of the underlying pleadings demonstrates that the subcontractor exception applies and the exclusion does not preclude Lloyd=s duty to defend.

## CONCLUSION

We hold that the pleadings in each underlying suit allege an Aoccurrence@ that would trigger Lloyds= duty to defend under the policy, and that no Abusiness risk@ exclusions preclude this duty to defend. Accordingly, we overrule Lloyds= issues and affirm the district court=s judgment.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:  June 13, 2002

Publish

18