COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-020-CV
 
VENTURE ENCODING SERVICE,
INC.                                                            
APPELLANT
V.
ATLANTIC MUTUAL INSURANCE
COMPANY                                                       
APPELLEE
------------
FROM THE 17
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION ON REHEARING
------------
Atlantic Mutual Insurance Company,
appellee, has filed a motion for rehearing, which we hereby deny. We withdraw
our prior opinion and judgment of October 10, 2002 and issue this new opinion to
address some of the issues appellee and the dissent to our opinion on rehearing
have raised.
Venture Encoding Service, Inc., appellant,
appeals from the trial court's grant of summary judgment in favor of Atlantic
Mutual Insurance Company, appellee, in connection with appellant's insurance
claim against appellee, its insurer, under its printing errors and omissions
coverage. We reverse and render in part and remand in part.
Factual Background
Appellant is a Fort Worth, Texas based
printing company. Under the terms of its agreement with one of its customers,
Sallie Mae Servicing Corporation, it was to produce, print, and mail customer
coupon payment books to Sallie Mae's customers. In mid-July 2000, appellant
printed and mailed 568,875 coupon payment books directly to Sallie Mae customers
per the agreement. Unfortunately, it printed the wrong lock box payment return
address on 328,799 of them. Appellant reprinted the erroneous books with the
correct lock box and re-mailed new ones to those customers who had received the
defective ones. The cost of reprinting and re-mailing was $122,888.
The summary judgment evidence showed that
appellant acquired a commercial general liability policy (CGL Policy) with a one
million dollar "Printers Errors and Omissions Policy" (Printers E
& O Policy) rider from appellee. Appellant paid $7,084 for the CGL Policy
and an additional $2,806 for the Printers E & O Policy. Appellant filed a
claim with appellee under the Printers E & O Policy for the $122,888.
Appellee denied the claim, which resulted in this suit.
Both parties filed motions for summary
judgment. Appellee moved for summary judgment on one theory: that the exclusion
clause of the Printers E & O Policy applied to the costs or damages incurred
by appellant because the reprinting was for the "correction, repair or
replacement of property damage" to appellant's product. The trial court
granted appellee's motion. This appeal followed.
Issues Presented
In two issues appellant challenges the
trial court's judgment. First, appellant asks whether a policy exclusion for
"property damage incurred in the correction, repair or replacement of the
insured's products" applies to economic damages incurred by the insured
under its Printers E & O Policy. Second, appellant asks whether costs
incurred to correct a printing error under a contractual obligation are covered
as sums the insured is "legally obligated to pay."
Standard of Review
When both sides move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both sides' summary judgment evidence and determine all questions
presented. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000). The reviewing court should render the judgment that the trial
court should have rendered. Id. When a trial court's order granting
summary judgment does not specify the grounds relied upon, the reviewing court
must affirm the summary judgment if any of the summary judgment grounds are
meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995).
Burden of Proof and
Contract Interpretation
Article 21.58(b) of the Texas Insurance
Code provides:

        
 In any suit to recover under a contract of insurance, the insurer has the
 burden of proof as to any avoidance or affirmative defense that must be
 affirmatively pleaded under the Texas Rules of Civil Procedure. Any language
 of exclusion in the policy and any exception to coverage claimed by the
 insurer constitutes an avoidance or an affirmative defense.

Tex. Ins. Code Ann. art. 21.58(b) (Vernon
Supp. 2002).
Rule 94 of the Texas Rules of Civil
Procedure provides in part:

 Where the suit is on an insurance
 contract which insures against certain general hazards, but contains other
 provisions limiting such general liability, the party suing on such contract
 shall never be required to allege that the loss was not due to a risk or cause
 coming within any of the exceptions specified in the contract, nor shall the
 insurer be allowed to raise such issue unless it shall specifically allege
 that the loss was due to a risk or cause coming within a particular exception
 to the general liability; provided that nothing herein shall be construed to
 change the burden of proof on such issue as it now exists.

Tex. R. Civ. P. 94.
In general, an insured bears the initial
burden of showing that there is coverage under an insurance policy and the
insurer bears the burden of proving the applicability of an exclusion that
permits it to deny coverage. Once the insurer proves the applicability of an
exclusion, the burden then shifts back to the insured to demonstrate that he or
she has coverage under an exception to the exclusion. Sink v. Progressive
County Mut. Ins. Co., 47 S.W.3d 715, 718 (Tex. App.--Texarkana 2001, pet.
granted) (citing Telepak v. United Servs. Auto. Ass'n, 887 S.W.2d 506,
507-08 (Tex. App.--San Antonio 1994, writ denied)); see Guar. Nat'l Ins. Co.
v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).
The construction of an insurance policy,
like other written contracts, is a question of law to be determined by the
court. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex.
1995); Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983). The general
rules regarding the interpretation of contracts govern our interpretation of
insurance policies. "A contract is unambiguous as a matter of law if it can
be given a definite or certain legal meaning." Grain Dealers Mut. Ins.
Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997); Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).
"If a contract is not ambiguous, the words used in the contract are to be
given their ordinary meaning." CU Lloyd's of Tex. v. Main St. Homes,
Inc., 79 S.W.3d 687, 695 (Tex. App.--Austin 2002, no pet.) (citing
Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984)). If the
insurance policy is subject to more than one reasonable interpretation, it is
ambiguous and the interpretation most favoring the insured is adopted. Ambiguity
does not arise, however, simply because the parties advance conflicting
interpretations. See CU Lloyd's of Tex., 79 S.W.3d at 695.
Here, both parties properly asserted their
bases for coverage, exclusion, and exception. The appellee properly raised the
section "l" exclusion as its basis for denying the claim in its
original answer. In response, appellant asserted the inapplicability of
Exclusion "I" as well as the applicability of the exception to the
exclusion clause. Because we believe the policy is unambiguous, we will
determine its plain meaning by looking to the terms of both documents together.
Discussion
The Policy
Key to resolution of the issues presented
is the policy language. The Printers E & O Policy provides:

 1. Insuring Agreement.
 
 a. We will pay those sums that the
 insured becomes legally obligated to pay as damages arising out of any
 negligent act, error or omission committed by . . . the insured in the
 course of providing or failing to provide "printing services"
 which occur during the policy period.
 
 . . . .
 2. Exclusions:
     This insurance does
 not apply to:
 . . . .
 
 b. Any claim for damages resulting in
 "bodily injury" or "property damage;"
 
 . . . .
 
 l. costs or damages incurred for
 the correction, or repair or replacement of "property damage" to:
 
 (1) "Your product"
 arising out of such products, or any part of such products; or
 (2) Work performed by or on behalf
 of the named insured arising out of the work or any portion of it, or out
 of the materials, parts or equipment furnished in connection with such
 work; [sic]
 
 This exclusion does not apply to
 damages incurred due to the withdrawal or inspection of such products or
 work because of any known or suspected defects or deficiency therein.
 [Emphasis added.]
 
 . . . .
 Section V - Definitions
 . . . .
 6. "Printing services" means
 those activities relating to the work of production and peculiar to the
 printing, publishing or graphic arts industries.
 7. "Property damage"
 means:
 
 a. Physical injury to tangible
 property, including all resulting loss of use of that property; or
 b. Loss of use of tangible
 property that is not physically injured.
 
 . . . .
 9. "Your product" means:
 
 a. Any goods of [sic] products (other
 than real property) manufactured, sold, handled, distributed or disposed of
 by: . . . You . . . .
 
 . . . .
 
 "Your product" includes
 warranties or representations made at any time with respect to the fitness,
 quality, durability or performance of any of the items included in a. . . .
 above. [Emphasis added.]
 

The parties agree the payment books fall
within the definition of "your product" under the Printers E & O
Policy, Section V, 9, and appellee did not deny that printing services were
involved. They disagree on whether this loss falls within the meaning of
"property damage" in exclusion clause "l" and whether the
exception to Exclusion "l" applies.
Application
Appellant contends that its claim is not
one for "property damage" as defined under the primary standard CGL
Policy, or even for "property damage" using the definition in
Exclusion "l" of the Printers E & O Policy. Also, appellant
contends that even if its claim was for property damage under Exclusion
"l", there is an exception to Exclusion "l" that
specifically applies: "This exclusion does not apply to damages incurred
due to the withdrawal or inspection of such products or work because of any
known or suspected defects or deficiency therein." Lastly, appellant
contends that the economic damages it is seeking arise from appellant's
fulfillment of its contractual obligations to Sallie Mae. Appellant asserts it
was "legally obligated" to incur the costs associated with correcting
its mistake, so that it complies with the opening paragraph of the Printers E
& O Policy that limits coverage to those obligations that the insured is
"legally obligated to pay."
Appellant frames its primary issue as
whether an insured's economic damages fit within the Printers E & O Policy
exclusion from coverage for property damage incurred in the correction, repair
or replacement of the insured's product. To answer this issue, appellant first
focuses on whether incorrectly printed information is tangible property.
Appellant argues Exclusion "l" applies only if appellant seeks
coverage for the cost of correcting, repairing, or replacing "physical
injury" or "loss of use" of tangible property. This argument is
based on the Printers E & O Policy's definition of "property
damage," which requires physical injury or loss of use of tangible property
that is not physically incurred. Appellant contends that its damages do not fit
within the policy definition of "property damage" because its damages
are solely economic damages. Appellant notes the distinction between CGL
policies, which generally exclude coverage for "business risks," and
Printers E & O policies, which include coverage. In particular, appellant
notes that Exclusion "l" in the Printers E & O Policy is required
to "coordinate the coverage provided under it . . . with that of the CGL
coverage part." Appellant argues that both the CGL Policy and the Printers
E & O Policy exclude coverage for property damages arising out of its
product but contends its damages are "economic" not "property
damages." Otherwise, the $2,800 additional premium it paid would be
worthless if it excluded the insured's economic losses incurred to correct its
printing errors. While appellee concedes that its Printers E & O Policy
includes "liability coverage for economic damages," it contends it is
limited to economic damages "sustained by third parties." We disagree,
and do so on the basis of Exclusion "l" to the Printers E & O
Policy.
First, for Exclusion "l" of the
Printers E & O Policy to apply there must be "property damage"
defined as "[p]hysical injury to tangible property . . . or [l]oss of use
of tangible property that is not physically injured." While appellant
admits the coupon books themselves are tangible property, it contends the error
or damage here relates to the incorrect information, i.e., the wrong lock box.
We agree.
Error in information is intangible
property not tangible property. See Adams v. Great Am. Lloyd's Ins. Co.,
891 S.W.2d 769, 772 (Tex. App.--Austin 1995, no writ). Damage to intangible
property constitutes economic loss, not property damage. See State Farm
Lloyds v. Kessler, 932 S.W.2d 732, 737 (Tex. App.--Fort Worth 1996, writ
denied); Adams, 891 S.W.2d at 772; Houston Petroleum Co. v.
Highlands Ins. Co., 830 S.W.2d 153, 156 (Tex. App.--Houston [1st
Dist.] 1990, writ denied). Thus, because there is no "property
damage," we hold Exclusion "l" does not apply. Therefore, we
sustain appellant's issue 1, "a." We do not reach sub-issues
"b" and "c" of appellant's first issue because our
disposition of "a" renders the resolution of those questions
unnecessary for final disposition of the appeal. However, before we turn to
appellant's second issue, we address the arguments made by the appellee and the
dissent regarding the application of the "sistership exclusion."
This exclusion was first discussed by our
Texas Supreme Court in Gulf Insurance Co. v. Parker Products, Inc., 498
S.W.2d 676 (Tex. 1973). There, the supreme court defined the "sistership
exclusion" from a CGL policy:

 It denies coverage for claims based upon
 the cost of withdrawing a product from the market, replacing a product or the
 loss of use of a product which is temporarily or permanently withdrawn . . .
 because of occurrences involving the same or similar product.

Id. at 678. The dissent says the
"sistership exclusion" found in Exclusion "l" prevents
coverage for any damages related to replacement of the defective work. This
assertion is incorrect for several reasons.
First, all the cases cited by the dissent
and appellee interpret "sistership exclusions" found in CGL policies
as opposed to special endorsements like the Printers E & O Policy here. CGL
policies are restricted to bodily injury and property damage whereas the purpose
of the Printers E & O Policy is to protect against specific business risks,
i.e., printer mistakes. As noted in Snug Harbor, Ltd. v. Zurich Insurance:

 Errors and omissions policies exclude
 damage to tangible property but cover damages sustained as a result of an act
 or omission--for example, claims made against professionals and business
 entities where one party receives notice for another and fails to properly or
 timely forward that notice:
 
 An errors-and-omissions policy is
 professional-liability insurance providing a specialized and limited type of
 coverage as compared to comprehensive insurance; it is designed to insure
 members of a particular professional group from the liability arising out of
 a special risk such as negligence, omissions, mistakes and errors inherent
 in the practice of the professions.
 

968 F.2d 538, 543 n.16 (5th Cir. 1992).
Secondly, the alleged "sistership
exclusion," if any, contained within the Printers E & O Policy is
actually contained within the exception to Exclusion "l":

 This exclusion does not apply to damages
 incurred due to the withdrawal or inspection of such products or work because
 of any known or suspected defects or deficiency therein.

The dissent complains that this
interpretation of the exception would render the exclusion meaningless whereas
we believe the dissent's interpretation of Exclusion "l" and its
exception would render the entire Printers E & O Policy practically useless.
When confronted with interpreting parts and provisions of two parts of a
contract, we are to interpret the contract to give all contract provisions
effect. Balandran v. Safeco Ins. Co., 972 S.W.2d 738, 741 (Tex. 1998); Autobond
Acceptance Corp. v. Progressive N. Ins. Co., 76 S.W.3d 489, 493 (Tex.
App.--Houston [14th Dist.] 2002, pet. denied); Commercial Union
Assurance Co. v. Silva, 75 S.W.3d 1, 3 (Tex. App.--San Antonio 2001, pet.
denied); Betco Scaffolds Co. v. Houston United Cas. Ins. Co., 29 S.W.3d
341, 344 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (en banc)
(op. on reh'g). Therefore, we conclude that the exception to Exclusion
"l" is, in reality, the reverse of a "sistership exclusion,"
i.e., it adds back coverage that might not otherwise be there.
In appellant's second issue it asks
whether the costs incurred in correcting a printing error to fulfill a
contractual obligation are covered sums for which an insured is "legally
obligated to pay." The opening paragraph of the Printers E & O Policy
limits coverage to "those sums that the insured becomes legally obligated
to pay as damages arising out of any negligent act, error or omission"
while providing printing services.
A review of the appellant's agreement with
Sallie Mae shows that appellant was contractually obligated to meet certain
quality control standards, including replacement of any defective coupon books
within forty-eight hours of notification. Under paragraph 6.1 of their agreement
any corrective action the appellant took was to be at its expense and "at
no additional charge to Sallie Mae Servicing." Also, paragraph 6.2 of the
Sallie Mae Agreement obligated appellant to pay any costs or expenses for
negligent performance. Specifically, that paragraph says:

 6.2 LIMITATIONS OF LIABILITY
 Venture shall be liable for any losses,
 costs, damages and expenses incurred . . . as a result of Venture's failure to
 perform its obligations hereunder . . . Venture shall be liable for and
 indemnify Sallie Mae Servicing from, all damages caused by the negligence or
 wilful misconduct of Venture, its employees or agents.

Because the insured had a legal obligation
under the terms of its contract with Sallie Mae to remedy and correct any
mistakes or errors in printing services, we conclude appellant's damages are
sums that the insured incurred in correcting a mistake or deficiency in covered
products or printing services. We also conclude that this insured was legally
obligated to pay or incur the expenses necessary to remedy the misprinted books.
Because the exception to the exclusion
applied and appellant was legally obligated to incur any damages necessary to
correct its printing error, appellee breached its contract with appellant by not
paying the claim. Thus, the trial court erred in granting summary judgment for
appellee regarding coverage and in denying appellant's motion for summary
judgment regarding coverage. Because appellee breached its contract, appellant
was also entitled to reasonable and necessary attorneys' fees under section
38.001 of the civil practices and remedies code. Tex. Civ. Prac. & Rem. Code
Ann. § 38.001 (Vernon 1997); see also Grapevine Excavation, Inc. v.
Maryland Lloyds, 35 S.W.3d 1, 5 (Tex. 2000). Because appellant did not
raise an issue or point in its brief regarding its claim for penalty damages
under article 21.55 of the insurance code, that claim is waived and appellant is
not entitled to additional damages under section 6 of article 21.55 of the
insurance code. Tex. Ins. Code Ann. art. 21.55, § 6; Tex. R. App. P. 33.1(a),
38.1(e).
Conclusion
In summary, we reverse the trial court's
summary judgment in favor of appellee, render summary judgment for appellant on
its coverage claim, exclusive of its article 21.55 claim, and grant appellant
its attorneys' fees, pre-and post-judgment interest, and costs. Tex. R. App. P.
43.2, 43.3, 43.4. We remand the case to the trial court for calculation of
damages and entry of judgment in accordance with this opinion and for any
further necessary proceedings regarding awards of attorneys' fees and costs in
connection with the underlying trial and this appeal.
 
                                                                   
TERRIE LIVINGSTON
                                                                   
JUSTICE
 
PANEL A: CAYCE, C.J.; LIVINGSTON and
WALKER, JJ.
               
CAYCE, C.J. filed a dissenting opinion.
DELIVERED: MAY 1, 2003

 
COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-020-CV
 
VENTURE ENCODING SERVICE,
INC.                                                            
APPELLANT
V.
ATLANTIC MUTUAL INSURANCE
COMPANY                                                    
APPELLEE
------------
FROM THE 17TH DISTRICT
COURT OF TARRANT COUNTY
------------
DISSENTING
OPINION ON REHEARING
------------
I dissent to the court's opinion denying
appellee's motion for rehearing. I would grant the motion and affirm the trial
court's summary judgment because Exclusion "l" of the printer's E
& O form specifically excludes from coverage replacement costs due to the
insured's faulty workmanship.
The clear and unambiguous intent of
Exclusion "l" is to preclude from coverage replacement costs incurred
by Venture Encoding Service Inc.'s faulty workmanship. This type of
"business risk" exclusion is common in liability policies, the purpose
of which is to "provide protection to the insured for personal injury or
for property damage caused by the completed product, but not for the
replacement and repair of that product." T.C. Bateson Constr. Co.
v. Lumbermens Mut. Cas. Co., 784 S.W.2d 692, 694-95 (Tex. App.--Houston [14th
Dist.] 1989, writ denied) (emphasis supplied); see also Sarabia v.
Aetna Cas. & Sur. Co., 749 S.W.2d 157, 157 (Tex. App.--El Paso 1988, no
writ) ("It is uniformly held that a liability policy containing such an
exclusion does not insure the policyholder against liability to repair or
replace his own defective work or product . . . ."); Travelers Ins. Co.
v. Volentine, 578 S.W.2d 501, 503-04 (Tex. Civ. App.--Texarkana 1979, no
writ) (same). The justification for treating these two risks differently
"is that the insured can control the quality of the goods and services he
supplies, while accidental injury to property or persons exposes him to almost
limitless liability." Bateson, 784 S.W.2d at 695. As the Bateson
court noted:

 [T]he exclusions are designed to protect
 insurers from contractors' attempts to recover funds to correct deficiencies
 caused by the contractors' questionable performance. Their use demonstrates
 the insurers' belief that the cost of not performing well is a cost of doing
 business and not considered part of the risk sharing scheme for which general
 liability policies are written.

Id. Thus, a contractor
"cannot recover from the insurer for his own failure to perform his
contract, but can recover for damages other than to his own work,
whether or not that work is defective." Hartford Cas. Co. v. Cruse,
938 F.2d 601, 603 (5th Cir. 1991) (emphasis supplied) (internal quotation
omitted).
The exception to Exclusion "l"
provides coverage for bodily injury, property damage, or other economic loss
resulting from Venture's faulty workmanship. It does not, as the majority
incorrectly holds, insure Venture against liability to replace its own defective
work--coverage expressly precluded by Exclusion "l." See Gulf Ins.
Co. v. Parker Prods., Inc., 498 S.W.2d 676, 678-79 (Tex. 1973) (explaining
"sistership" exclusion); Gen. Mfg. Co. v. CNA Lloyd's of Tex.,
806 S.W.2d 297, 300 (Tex. App.--Dallas 1991, writ denied) (construing business
risk exclusion); see also Taylor v. Travelers Ins. Co., 40 F.3d 79, 82
(5th Cir. 1994) (holding that liability policy containing business risk
exclusion does not insure the policy holder against liability to repair or
replace his own defective work or product). The majority's novel reading of the
exception to provide coverage precluded by Exclusion "l" renders the
exclusion meaningless and enlarges coverage beyond what the express terms of the
policy provide.
For these reasons, I dissent.
 
                                                                   
JOHN CAYCE
                                                                   
CHIEF JUSTICE
 
DELIVERED: MAY 1, 2003