The WEITZ COMPANY, LLC,
f/k/a The Weitz Company,
Inc., Plaintiff,

v.

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, f/k/a Aetna Casualty & Surety Company of America; TIG Insurance Company, f/k/a Transamerica Insurance Company; and Employers Insurance of Wausau, Defendants.

No. 4:02–CV–40188.

United States District Court,
S.D. Iowa,
Central Division.

June 2, 2003.

John A. Templer, Jr., Barbara M. Tapscott, Pingel & Templer PC, West Des Moines, IA, Edward M. Joyce, Timothy J. Horman, Heller, Ehrman, White & McAuliffe LLP, New York City, for plaintiff.

Steven P. Wandro, Kimberly K. Baer, Wandro & Associates, Megan M. Antenucci, Whitfield & Eddy PLC, Henry A. Harmon, Greffe & Sidney PLC, Des Moines, IA, for defendants.

## ORDER ON MOTION OF DEFENDANT EMPLOYERS INSURANCE OF WAUSAU FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter comes before the Court on Defendant Employers Insurance of Wausau's ("Wausau") Motion for Summary

Judgment (Clerk's No. 36). A hearing was held on April 4, 2003; Henry A. Harmon argued on behalf of Wausau, and John A. Templer argued on behalf of Plaintiff, The Weitz Company ("Weitz"). For the reasons discussed below, Wausau's Motion for Summary Judgment is **denied**.

## I. BACKGROUND FACTS [1]

In 1989, Weitz entered into a general contractor construction contract with Shoreline Care, Limited Partnership ("Shoreline") of North Branford, Connecticut. During this first phase of the construction project ("Phase I"), Weitz was to construct a continuing care retirement community for Shoreline called Evergreen Woods. To provide the heating, ventilation, and air conditioning ("HVAC") work in Evergreen Woods during Phase I construction, Weitz subcontracted with Janazzo Heating and Air Conditioning, Inc. ("Janazzo"), of Milldale, Connecticut, on August 22, 1990 (Subcontract "D385–32"). Under the D385–32 subcontract, Janazzo was to begin its part of Phase I construction on July 30, 1990, and finish by June 17, 1991. Janazzo was to have Weitz included as an additional insured on Janazzo's commercial general liability ("CGL") insurance policies for Phase I construction.

On April 30, 1991, Weitz contracted with Shoreline again, agreeing to be general contractor for a second phase of construction at Evergreen Woods ("Phase II"). To provide the HVAC work during Phase II, Weitz entered into a second subcontract with Janazzo on January 9, 1992 (Subcontract "D385–D1"). Under the D385–D1 subcontract, Janazzo was to begin its part of the Phase II construction on December 30, 1991, and be finished by May 15, 1992. Again, it was understood that Janazzo would have Weitz included as an additional insured on Janazzo's CGL insurance policies for Phase II construction. Although multiple insurance companies provided insurance coverage throughout the construction of Evergreen Woods, this motion only concerns two Wausau policies.

### A. *The Wausau Insurance Policies.*

The first Wausau policy at issue, policy 1520 00 079387 ("1520"), was in effect from September 1, 1989, through September 1, 1990. Policy 1520 was effective for nine days during the existence of the Phase I/D385–32 subcontract between Weitz and Janazzo (Phase I/D385–32 signed on August 22, 1990; policy 1520 expired on September 1, 1990). Policy 1520 lists Janazzo as the named insured but does not list Weitz anywhere as an additional insured.

By the time Janazzo and Weitz agreed to the second subcontract in January of 1992, policy 1520 had expired and Janazzo had purchased a second Wausau policy, policy 1521 00 079387 ("1521"). Policy 1521 was in effect from September 1, 1990, through September 1, 1991. Thus, policy 1521 had expired four months before Weitz and Janazzo agreed to the second subcontract (Policy 1521 expired on September 1, 1991, and subcontract D385–D1 was signed on January 9, 1992). Janazzo is listed as the named insured on policy 1521. Through an additional insured endorsement made effective on September 26, 1990, Weitz became an additional insured to the 1521 policy. This September endorsement clearly shows Weitz as a named additional insured under policy 1521 for the "Evergreen Woods Project D385–32 H.V.A.C. & Plumbing" portion of the construction project. On October 11, 1990,

---

1. For a more thorough discussion of the background facts of this case, *see The Weitz Co., LLC, f/k/a The Weitz Co., Inc. v. Travelers Cas. & Sur. Co. of America, et al.*, 2002 WL 31371969 (S.D.Iowa 2002).

Wausau issued a certificate of insurance to Weitz which referenced policy 1521 and indicated that "The Weitz Company is named as additional insured for job known as: Subcontract Agreement # D385–32—Evergreen Woods". *See* Wausau Ex. E. Weitz, therefore, had additional insured status under policy 1521, but only as to Phase I construction (the D385–32 subcontract).

## B. *Phase I and Phase II Construction Problems are Discovered.*

The first indication that problems existed with the Evergreen Woods HVAC system occurred when portions constructed during Phase II were claimed to be underdesigned for the size of the Evergreen Woods facility. It was asserted the HVAC system created negative air pressure, meaning the exhaust system drew out more air than the supply system was designed to bring into the premises, therefore providing inadequate heating. Shoreline claimed Janazzo should have known of the faulty design of the HVAC system before installing it and had failed to alert Shoreline. Furthermore, Shoreline asserted Janazzo had failed to perform its air balancing report duties faithfully, which, if done correctly, would have uncovered the design problems of the HVAC system. Eventually, Shoreline focused its allegations onto Weitz as general contractor, leading Shoreline to pursue arbitration against Weitz in June of 1994 pursuant to an arbitration clause contained in the Phase II contract.[2] At the conclusion of arbitration, the arbitrators assessed liability to Weitz but did not award Shoreline damages.[3] In connection with the Phase II arbitration, Weitz incurred defense costs totaling approximately $338,778.83.

Subsequently, similar issues arose with that portion of the HVAC system constructed during Phase I. On May 2, 1996, Shoreline brought suit against Weitz in Connecticut state court related to Phase I construction.[4] The Phase I lawsuit con-

2. The specific allegations in the Phase II arbitration were that "(1) the [HVAC] system, by reason of faulty design, cannot produce the heating capacity needed because the exhaust system draws out more air than the supply system was designed to bring into the premises; (2) this condition was apparent in the plans and specifications; (3) [Weitz] had actual knowledge of this condition based on its experience and size and its participation in preconstruction planning ...; (4) [Weitz], through its subcontract with Janazzo ... completed construction in accordance with said plans and specifications and thereby became liable for 'an appropriate amount of the attributable costs for correction'; (5) the dysfunctional system failed to meet code requirements and therefore [Weitz] should 'assume full responsibility for such work and shall bear the attributable costs' ...." *See* Weitz Ex. 3, Arbitration Decision, p. 1.

3. The primary reason for not awarding Shoreline damages in the Phase II arbitration was because the only parties in the arbitration were Shoreline and Weitz, and the arbitrators believed there was not enough evidence to apportion liability among all who should have known of the inadequately designed HVAC, including the designer (Jansen and Rogan), the architect (TPA Design Group), Weitz, and Janazzo. *See* Weitz Ex. 3, Arbitration Decision, p. 2, ¶ 3. Therefore, "the cost, if any, attributable to [Weitz] cannot be fixed." *Id.* at ¶ 7.

4. In its ruling, the Connecticut state court discussed the nature of the claims asserted in that action: "The complaints about the Evergreen Woods' HVAC system center on maintaining an appropriate level of heat in a life care facility in light of, or in spite of, the type of system installed." *Shoreline Care Ltd. P'ship v. Jansen & Rogan Consulting Eng'rs,* 2002 WL 31758432 * 2 (Conn.Super.Ct. Nov.15, 2002) (unpublished). When Phase I litigation commenced, "Evergreen Woods was heated by an air to air electric heat pump system ... the cheapest heating system to install, but the most expensive to operate." *Id.* In its claims against Weitz, Shoreline "claim[ed] that it incurred damages because

cluded on February 28, 2002. On November 15, 2002, the Connecticut state court announced its decision, finding in favor of Shoreline against Jansen & Rogan, the mechanical and electrical consulting engineers who designed the HVAC system, in the amount of $228,853.98. *See Shoreline Care Ltd. P'ship v. Jansen & Rogan Consulting Eng'rs*, 2002 WL 31758432 *7 (Conn.Super.Ct. Nov.15, 2002) (unpublished). The court dismissed Shoreline's counts against Weitz and Janazzo without assessing liability upon either of them. *See id.* In connection with the Phase I litigation, another insurance company named as a defendant in this case, Travelers, obtained legal services on behalf of Weitz and, as of June of 2002, had spent over $750,000 associated with the Phase I litigation. Wanting to monitor these attorneys, Weitz obtained independent legal counsel and has incurred approximately $35,196.08 in associated costs as of October of 2002.

### C. *Correspondence Between Weitz and Wausau.*

While the Phase II arbitration was ongoing, Weitz contacted Wausau about both Wausau policies in an effort to recoup the Phase II arbitration expenses. Eventually, this exchange of correspondence also concerned Weitz' request for coverage under both Wausau policies for the Phase I litigation. Describing all of the letters contained in the record is unnecessary; however, elaboration on three items of correspondence is pertinent to the Court's decision.

### 1. *The July 27, 1995, Letter.*

After Wausau investigated Weitz' claims for coverage under both policies for the Phase II arbitration expenses, Wausau contacted Weitz on July 27, 1995. *See* Wausau Ex. H. Referencing only the 1521 policy, Wausau informed Weitz that, with respect to the arbitration proceeding, Wausau determined "there is no coverage under the insurance policy to the Weitz Company as they are not an additional insured." *Id.* Wausau explained that its investigation indicated the arbitration proceeding related to work done during Phase II, a phase of construction occurring after the expiration of the 1521 policy. *Id.* Wausau explained that while an additional insured endorsement did list "the Weitz Company for the Evergreen Woods Project D385–32 HVAC and plumbing", Wausau believed the "products/completed operations hazard" exclusion contained in policy 1521's additional insured endorsement applied and precluded coverage for the Phase II arbitration.[5] *Id.* Wausau took this position because Janazzo was to

Weitz breached its contractual obligations in the following ways: (1) breach of its duty to advise [Shoreline] in the selection of a heating method and use of gas-fired equipment at another life care facility [Weitz was involved in]... resulting in the selection of the less efficient and more expensive-to-operate electric heating system; (2) failing to have the HVAC system balanced by a certified independent contractor; (3) failing to report design defects and inadequacies in the HVAC system; and (4) failing to perform proper value engineering." *Id.* Shoreline had "renovated [Evergreen Woods] by installing two new gas-fired central boiler units to provide heat in the hallways and patient rooms in each of the

nursing wings", and the damages Shoreline sought included "all costs of retrofitting Evergreen Woods." *Id.* Shoreline additionally sought damages associated with repairing "frozen sprinkler. pipes in the links between the buildings and in other common areas." *Id.*

5. The "products/completed operations hazard" exclusion in the additional insured endorsement to policy 1521 says, "The coverage afforded by this endorsement does not apply to bodily injury or property damage included in the products/completed operations hazard." *See* Wausau Ex. D1, Additional Insured Endorsement to Policy 1521, p. 3, ¶ 3. In the

begin Phase II construction on December 31, 1991, a date after policy 1521 expired. *Id.*

Although Weitz had not yet been sued for problems arising from Phase I construction at the time of this letter, Wausau informed Weitz that Wausau's investigation indicated that any potential claims arising from Phase I construction would also relate to damages not occurring until after Janazzo's work was completed and, as such, also qualified as " 'products/completed operations hazards' and the Weitz Company is not an additional insured. Add to that fact that all damages occurred after the expiration date of the policy and there is no coverage for any insured under the policy." *Id.* In this letter, Wausau never mentions the 1520 policy; however, in its motion for summary judgment, Wausau asserts this letter is the point at which Wausau initially denied benefits under policy 1520 regarding Phase I construction.

### 2. *The April 9, 1996, Letter.*

After learning Shoreline had taken the initial steps to formally sue Weitz in Connecticut state court over problems associated with Phase I construction, Weitz contacted Wausau and requested coverage under the 1521 policy for the anticipated Phase I litigation. *See* Wausau Ex. J. On April 9, 1996, Wausau contacted Weitz to explain the reasons why Weitz was not covered by policy 1521 for Phase I litigation. *See* Wausau Ex. K. Wausau determined Shoreline's alleged property damage in the Phase I litigation arose out of the "products/completed operations hazard" exclusion in the additional insured endorsement [6] and, as such, coverage under the 1521 policy did not exist. Wausau then reiterated that "the allegations of property damage or the failure of the HVAC system ... occurred after the expiration date" of policy 1521. *Id.* Reminding Weitz that any insurance coverage Weitz was entitled to was strictly limited to the language of the additional insured endorsement, Wausau explained that while additional insured coverage "would also include the acts or omissions of Weitz ... in connection with the general supervision of Janazzo['s] ... work", Weitz would not be covered for its own independent acts of negligence.[7] *See id.* Wausau asserted Shoreline's claims in the Phase I litigation consisted of Weitz' independent negligence

---

1521 policy, the definition for "products-completed operations hazard" includes:

all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. 'Your work' will be deemed completed at the earliest of the following times: (1) When all of the work called for in your contract has been completed. (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site. (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*See* Wausau Ex. D, Section V, ¶ 11(a)-(b). The identical definition is contained in the 1520 policy. *See* Wausau Ex. C, Section V, ¶ 11(a)-(b).

**6.** *See* footnote 5.

**7.** The relevant exclusion in the additional insured endorsement to policy 1521 Wausau relied on indicates that "insurance does not apply to 'Bodily injury' or 'property damage' arising out of any act or omission of the additional insured(s) or any of their employees, other than the general supervision of work performed for the additional insured(s) by you." *See* Wausau Ex. D1, Additional Insured Endorsement to Policy 1521, p. 2, ¶ 2(B)(3); *see also* Wausau Ex. D1, Additional Insured Endorsement to Policy 1521, p. 2,

which fell outside of the scope of the work done by Janazzo. *Id.* Nevertheless, Wausau again expressed its belief that insurance coverage for Shoreline's alleged property damage was precluded by the "products/completed operations hazard". *Id.* Finally, pointing to exclusion (m) in the 1521 policy [8] and referencing the definition for "your work" contained in the 1521 policy,[9] Wausau explained "this exclusion is on point as it refers to the allegations [Shoreline alleged against Weitz in Connecticut state court] for the failure of the HVAC system to perform ...." *Id.* Thus, according to Wausau, "[e]ven if this was considered an operations/premises hazard, there would not be coverage afforded to Weitz ...." *Id.* In its motion for summary judgment, Wausau asserts this letter is the point at which it initially denied benefits under policy 1521 with respect to the alleged damages incurred.

### 3. *The July 12, 1996, Letter.*

Three months later, the parties still disputed Weitz' claim to coverage for both phases of construction under both policies, and on July 12, 1996, Wausau contacted Weitz reiterating that Weitz was not entitled to insurance coverage under either policy for either phase of the construction. *See* Wausau Ex. L. Wausau further elaborated on why it took this no coverage position. For example, Wausau indicated that, based on its investigation of the Phase II arbitration and the Phase I complaint, Wausau determined the earliest problems associated with the inadequately designed HVAC system could have occurred was during the 1991/1992 winter, a time subsequent to the expiration of the last Wausau policy, policy 1521. *Id.* With respect to policy 1520, Wausau pointed out that Weitz was not an additional insured and, therefore, not entitled to coverage. *Id.* Wausau explained that even if Weitz had been an additional insured on policy 1520, coverage still would not exist because there had been no "bodily injury" [10] or "property damage" [11] caused by an "oc-

¶ 1(A)-(B), which reads: "**WHO IS AN INSURED** (section II) is amended to include as an insured the person or organization (called 'additional insured') shown in the Schedule but only with respect to liability arising out of: (A) 'Your work' for the additional insured(s) at the location designated above; or (B) *Acts or omissions of the additional insured(s) in connection with the general supervision of 'your work' at the location shown in the Schedule.*" (emphasis added).

**8.** Exclusion (m) to the 1521 policy indicates insurance does not apply to " 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." *See* Wausau Ex. D, Section I, ¶ 2(m).

**9.** In the 1521 policy, " 'Your work' means: (a) Work or operations performed by you or on your behalf; and (b) Materials, parts or equipment furnished in connection with such work or operations. 'Your work' includes: (a) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and (b) The providing of or failure to provide warnings or instructions." *See* Wausau Ex. D, Section V, ¶ 15.

**10.** In the 1520 policy, " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Wausau Ex. C, Section V, ¶ 3.

**11.** In the 1520 policy, " 'Property damage' means: (a) Physical injury to tangible property, including all resulting loss of use of that property; or (b) Loss of use of tangible property that is not physically injured." *See* Wausau Ex. C, Section V, ¶ 12.

currence"[12] within the policy period of 1520.[13] *Id.* With respect to policy 1521, Wausau pointed out that although Weitz was a named insured, there was no coverage because, *inter alia*, there had been no "bodily injury"[14] or "property damage"[15] caused by an "occurrence"[16] within the policy period.[17] *Id.* On similar bases, Wausau also indicated that Weitz was not covered under two separate Wausau "umbrella" policies (umbrella policy 1530 corresponding to the 1520 policy; umbrella policy 1531 corresponding to the 1521 policy). *Id.* Thus, Wausau's position remained that neither policy entitled Weitz to reimbursement of defense costs for the Phase II arbitration or for defense and indemnification in the Phase I litigation. *Id.*

## II. THIS LAWSUIT

On April 23, 2002, Weitz brought the current action in this Court, alleging Defendants breached the duty to defend and sought a declaratory judgment as to Defendants' duty to indemnify. On October 2, 2002, Wausau moved for summary judgment, believing no genuine issue of material fact exists with respect to Wausau's duty to defend or indemnify Weitz under either policy for either phase of construction.

In its comprehensive motion, Wausau addresses the 1520 policy first, arguing that damages incurred during Phase I construction are not covered under the 1520 policy. Wausau argues three reasons in support of its position: (1) Weitz' claims are barred by Connecticut's statute of limitations; (2) Weitz is not an additional insured under policy 1520; and (3) no property damage occurred within the effective dates of the 1520 policy. Additionally, Wausau argues policy 1520 does not cover Phase II construction since Phase II construction began after the 1520 policy expired. Turning to the 1521 policy, Wausau first addresses Phase I and argues Shoreline's damages incurred during Phase I are not covered by policy 1521. Wausau submits two reasons to support this position: (1) Weitz' claims are barred by Connecti-

12. In the 1520 policy, " 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Wausau Ex. C, Section V, ¶ 9.

13. The 1520 policy specifies: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies ... This insurance applies only to 'bodily injury' and 'property damage' *which occurs during the policy period.* The 'bodily injury' and 'property damage' must be caused by an 'occurrence.' " *See* Wausau Ex. C, Section I, ¶ 1(a) (emphasis added).

14. In the 1521 policy, the definition of "Bodily injury" is identical to the 1520 policy definition. *See* footnote 10.

15. In the 1521 policy, " 'Property damage' means: (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." *See* Wausau Ex. D, Section V, ¶ 12(a)-(b).

16. In the 1521 policy, the definition of "Occurrence" is identical to the 1520 policy definition. *See* footnote 12.

17. The 1521 policy specifies: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies ... This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' *occurs during the policy period.*" *See* Wausau Ex. D, Section I, ¶¶ 1(a), (b)(1)-(2) (emphasis added).

cut's statute of limitations; and (2) 1521 policy language expressly precludes liability for the claims Shoreline has alleged. Addressing Phase II construction, Wausau argues Weitz is not an additional named insured for Phase II construction under the 1521 policy; moreover, Wausau asserts that Phase II construction is not covered under the 1521 policy because Phase II construction commenced after the 1521 policy expired. For these reasons, Wausau argues Weitz is not entitled to coverage under either contract for either phase of construction, and Wausau is entitled to judgment as a matter of law.

In its resistance, Weitz first insists Iowa's statute of limitations applies rather than Connecticut's, making this case timely. Alternatively, Weitz asserts that, even if Connecticut's statute of limitations does apply, the limitations period has been tolled by actions of Wausau, raising genuine issues of material fact as to whether this case is time barred. Weitz believes Shoreline's claims in the Phase II arbitration and Phase I litigation are covered under the Wausau policies, thereby giving rise to Wausau's duty to defend and/or indemnify. Weitz claims Wausau's duty to defend and/or indemnify exists because the underlying actions include allegations of property damage, property damage beginning with the alleged defective design, and alleged negligent design review of the HVAC system. Additionally, Weitz challenges the applicability of Wausau policy exclusions with three arguments: (1) Wausau ignores the fact that Shoreline's allegations against Weitz arise out of the work Janazzo did for Weitz; (2) a fact issue exists regarding coverage for Weitz' alleged independent acts of negligence; and (3) Wausau ignores the allegations of negligent supervision asserted against Weitz.

Finally, Weitz attacks Wausau's belief that Weitz had additional insured status only on policy 1521 and only for Phase I construction. Weitz has included in the record a certificate of insurance issued by Wausau on July 10, 1990, which references policy 1520 and indicates "The Weitz Company, Inc. is named as additional insured for project known as: Job: D385–21 Evergreen Woods". *See* Weitz Ex. 24.

Wausau has replied, reiterating that Connecticut's statute of limitations applies. In reply, Wausau also disagrees with Weitz' contention that Connecticut's statute of limitations has been tolled.

### A. *Wausau's Motion for Summary Judgment.*

#### 1. *Choice of Law to Determine Statute of Limitations.*

■ There is no choice of law provision in either of the Wausau policies in question. The first step in determining any choice of law question is to properly characterize the type of case involved, and the law of the forum controls this question. *Drinkall v. Used Car Rentals, Inc.*, 32 F.3d 329, 331 (8th Cir.1994). The claim Weitz brings against Wausau is based on policies of insurance. Wausau has denied coverage for a variety of reasons. Weitz' allegations against Wausau, therefore, relate to contracts. *See generally Grinnell Mut. Reinsurance Co. v. Jungling, Jr.*, 654 N.W.2d 530, 536 (Iowa 2002) (indicating that "insurance policies are in the nature of adhesion contracts.").

As indicated, Wausau believes Connecticut's six-year statute of limitations for breach of contract[18] applies to time bar this case, while Weitz avers Iowa's ten-year statute of limitations for breach of

---

18. Conn.Code § 52–576(a) provides that "no action, ... on any contract in writing, shall be brought but within six years after the right of action accrues."

contract[19] applies, which would not bar this case. Before proceeding with a choice of law analysis, "a 'true conflict' must exist between the laws of the possible jurisdictions on the pertinent issue." *Harlan Feeders, Inc. v. Grand Laboratories, Inc.,* 881 F.Supp. 1400, 1404 (N.D.Iowa 1995) (citing *Nesladek v. Ford Motor Co.,* 46 F.3d 734, 736 (8th Cir.1995)). This Court recognizes that Weitz commenced this lawsuit on April 23, 2002, and, if Connecticut's statute of limitations applies, this case is time barred; whereas, if Iowa's statute of limitations applies, the case may proceed. Recognizing a "true conflict" exists in this case, the Court continues the choice of law analysis. *See Nesladek,* 46 F.3d at 736.

■ This Court's jurisdiction is based upon diversity of citizenship; therefore, this federal court must follow the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Washburn v. Soper,* 319 F.3d 338, 341 (8th Cir.2003). "Iowa has adopted the Second Restatement of Conflicts as its choice-of-law provision." *Grove v. Principal Mut. Life Ins. Co.,* 14 F.Supp.2d 1101, 1106 (S.D.Iowa 1998) (citing *Cole v. State Auto. & Cas. Underwriters,* 296 N.W.2d 779, 781 (Iowa 1980)). Where, as here, the parties to a contract have not specified which law governs, Iowa applies the law of the state with the "most significant relationships" or interests in the litigation, as determined by Restatement (Second) of Conflict of Laws § 188.[20] *See id.*

Wausau asserts that under § 188, Connecticut is the state with the most significant relationship to this case since the insurance policies were purchased by a Connecticut corporation (Janazzo), were issued in Connecticut, and were to insure work to be performed in Connecticut. Moreover, Wausau points out that the Restatement (Second) of Conflict of Laws provides additional guidance for contracts of fire, surety, or casualty insurance. *See Gabe's Constr. Co v. United Capitol Ins. Co.,* 539 N.W.2d 144, 146–47 (Iowa 1995) (discussing Restatement (Second) of Conflict of Laws § 193). Section 193 indicates that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ...." *See* Restatement (Second) of Conflict of Laws § 193. Evergreen Woods is located in Connecticut, and Wausau argues § 193 provides another reason Connecticut law governs this case.

At oral argument, Wausau pointed to the recently decided *Washburn* case to support its assertion that this federal court sitting in Iowa ought to apply Connecticut's statute of limitations. In *Washburn,* former Illinois clients brought a diversity suit for legal malpractice in federal court for the Southern District of Iowa against Soper, an attorney licensed to practice in both Iowa and Illinois but who maintained his law firm headquarters in Davenport,

---

**19.** Iowa Code § 614.1(5) provides that actions "founded on written contracts, ... [must be brought] within ten years."

**20.** Section 188 indicates that the contacts to be taken into account include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the

contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Additionally, these contacts are to be evaluated according to their relative importance with respect to the particular issue. *See* Restatement (Second) of Conflict of Laws § 188(2).

Iowa. *See Washburn,* 319 F.3d at 340. The suit named Soper individually and as partner of the lawfirm. *Id.* The law firm moved for summary judgment, claiming the suit was barred by Illinois' two-year statute of limitations. *Id.* On appeal, the Eighth Circuit affirmed the district court's application of revised Restatement (Second) of Conflict of Laws § 142, agreed that the Illinois statute of limitations was applicable although Iowa was the forum, and affirmed the district court's finding that the case was barred by Illinois' two-year statute of limitations. *Id.* at 343–344. The Eighth Circuit noted the policies underlying Iowa and Illinois, as well as the basic policies underlying statutes of limitations, which protect both defendants and courts from stale claims. *Id.* at 342. Based upon this review, the Eighth Circuit believed "applying Iowa's longer limitations period would undermine [Iowa's] interest in protecting resident defendants." *Id.* at 343. While the Eighth Circuit did recognize Iowa had interests in the litigation, the court was not persuaded the interests were "substantial", particularly where "plaintiffs are Illinois residents, the defendant attorney is licensed in both Iowa and Illinois, the defendant attorney was retained to represent the plaintiffs in Illinois state court proceedings, and these proceedings concerned Illinois residents, Illinois businesses, Illinois trust agreements, and Illinois contracts." *Id.* Thus, the federal district court sitting in Iowa was found to have correctly applied the Illinois statute of limitations. *Id.* Wausau relies on *Washburn* for its position that, in this case, any interest Iowa has is not substantial, and, therefore, this court sitting in Iowa ought to apply Connecticut's statute of limitations, Connecticut being the state with the most significant contacts.

In Connecticut cases involving actions for breach of contracts, "the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." *Kennedy v. Johns–Manville Sales Corp.,* 135 Conn. 176, 62 A.2d 771, 773 (1948). The test for determining when the right of action for benefits accrues under a contract is "when the plaintiff first could have successfully maintained an action." *Engelman v. Connecticut Gen. Life Ins. Co.,* 240 Conn. 287, 690 A.2d 882, 886 fn. 7 (1997) (internal quotation marks omitted; citation omitted). The Supreme Court of Connecticut has indicated that an insurance policy is breached when the insurance company denies the claim. *Id.*

As indicated, Wausau argues with respect to Phase I, that coverage under policy 1520 was initially denied on July 27, 1995, and that coverage for both phases of construction under policy 1521 was initially denied on April 9, 1996. Applying Connecticut's six-year statute of limitations for breach of contract cases, Wausau argues the cause of action under the 1520 policy expired on July 27, 2001, and the cause of action under the 1521 policy expired on April 9, 2002. Under this timetable, this lawsuit, commenced on April 23, 2002, would be time barred.

For summary judgment purposes only, Weitz concedes that Connecticut is the state with the most significant contacts and, therefore, provides the law applicable to the substantive issues of this case. Weitz argues, however, that Iowa's ten-year statute of limitations for breach of contract actions applies, and, therefore, this case is not time barred. Weitz points out that Iowa follows Restatement (Second) of Conflict of Laws §§ 142–143 in determining which statute of limitations to apply. *See Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.,*

934 F.Supp. 302, 305 (S.D.Iowa 1996) (citing *Cameron v. Hardisty,* 407 N.W.2d 595, 596 (Iowa 1987)).

Historically, "[u]nder Iowa law, statutes of limitations [were] considered procedural." *Id.* "Iowa's choice of law rules traditionally have required application of local law to matters of procedure, subject to two exceptions: cases where the Iowa borrowing statute applies, and where the 'right-remedy' distinction of Restatement (Second) of Conflict of Laws § 143 applies." [21] *Id.* at 304 (citing *Cameron,* 407 N.W.2d at 596). As indicated by the Eighth Circuit in *Washburn,* § 142 of the Restatement (Second) of Conflict of Laws has been revised, replacing the prior sections of 142–143 of the Restatement. *See Washburn,* 319 F.3d at 341; *see also Great Rivers,* 934 F.Supp. at 305. Based on Iowa's favor of the Restatement (Second) of Conflict of Laws, it has been predicted Iowa would adopt revised section § 142 once confronted with the issue. *See Washburn,* 319 F.3d at 342; *see also Great Rivers,* 934 F.Supp. at 305. Currently, Restatement (Second) of Conflict of Laws § 142 reads:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:

> (a) maintenance of the claim would serve no substantial interest of the forum; and
>
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflict of Laws § 142 (emphasis added). The factors listed in section 6 of the Restatement (Second) of Conflict of Laws currently include:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability, and uniformity of result,
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. Revised section 142 follows the new trend of "no longer characteriz[ing] the issue of limitations as ipso facto procedural and hence governed by the law of the forum." *See* Restatement (Second) of Conflict of Laws § 142, cmt. e. Instead, "courts select the state whose law will be applied to the issue of limitations by a

---

**21.** Neither Wausau nor Weitz address either of these two exceptions, and the Court recognizes the revision to § 142 subsumes the right-remedy distinction previously highlighted in § 143. *See* reporter's note to Restatement (Second) of Conflict of Laws, § 142, indicating "[t]his section is designed to replace original [sections] 142 and 143." *See* Restatement (Second) of Conflict of Laws,

§ 142, reporter's note; *see also* Cmt. g to § 142, which indicates: "[t]he view that statutes of limitations should ordinarily be characterized as procedural has been abandoned in many recent decisions. Under these decisions, the question whether a statute bars the right and not merely the remedy has lost its significance."

process essentially similar to that used in the case of other issues of choice of law." *Id.*

In applying revised section 142, the " 'general' approach requires that [this Court] first look to the forum state [in this case, Iowa] to see if the claim is barred; [as explained] it is not." *See Great Rivers,* 934 F.Supp. at 306. "The forum law permitting the claim applies unless *two* things are true: maintenance of the claim serves no substantial interest of the forum ... *and* the claim would be barred in a state having a more significant relationship to the parties and the occurrence." *Id.* (emphasis added). In this case, unlike in *Great Rivers,* one of the parties to the action, Weitz, is an Iowa resident. This is important because, in such a situation, while not controlling, *Great Rivers* suggests that allowing Weitz, an Iowa resident, the ability to maintain this suit does serve a substantial interest of Iowa. *See, e.g., Great Rivers,* 934 F.Supp. at 306 (analyzing section 142(2)(a) and explaining "the forum law permitting the claim applies unless two things are true: maintenance of the claim serves no substantial interest of the forum *(which is the case here as no parties are citizens or residents of Iowa)* ....") (emphasis added). Furthermore, Weitz argues that, since Iowa is also where the subcontracts and insurance certificates for the policies were delivered and accepted by Weitz, this provides Iowa further interest in this action. Iowa has other interests in this litigation, including "pro-

tecting any of its citizens [named as additional insureds in insurance policies] and providing a fair trial to its citizens who are incorporated [in Iowa]." *See Grove,* 14 F.Supp.2d at 1107.

At oral argument, Weitz pointed to another Iowa interest, encouraging companies conducting nationwide business to be headquartered and incorporated in Iowa, suggesting Iowa has an interest in allowing its more generous statute of limitations to benefit its corporate citizens. Furthermore, Weitz submitted a post-argument brief in which it distinguished *Washburn* and argued the case was not persuasive to the facts in the instant case. This Court agrees that *Washburn* is not determinative to the issues involved in this case. Of great significance is that, in *Washburn,* the defendant was a corporate resident of Iowa and, "[t]hus, applying Iowa's longer limitations period [and allowing the case to proceed] would undermine [Iowa's] interest in protecting resident defendants [from stale claims]." *Washburn,* 319 F.3d at 343. In contrast, the case at bar involves a plaintiff who is an Iowa corporate resident seeking to benefit from Iowa's more generous statute of limitations.

This Court is persuaded that, under the facts of this case, Iowa's interests in maintaining this lawsuit are substantial.[22] Believing that maintenance of this case does serve a substantial interest of Iowa, Iowa's ten-year statute of limitations governs this case.[23] *See Great Rivers,* 934 F.Supp. at

---

**22.** Wausau points to language from Comment e of § 142, which is discussed in *Great Rivers,* 934 F.Supp. at 306, that "a claim will not be maintained if it is barred by the statute of limitations of the state which, with respect to the issue of limitations, is the state of most significant relationship to the occurrence and the parties", to suggest that Connecticut's statute of limitations must be applied. This Court disagrees. Finding under § 142(2)(a) that maintenance of this suit does serve a

substantial interest of Iowa, this Court does not address whether "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence", *see* § 142(2)(b), because this Court believes its decision under § 142(2)(a) ends the inquiry.

**23.** Comment g of section 142 of the Restatement (Second) of Conflict of Laws supports this view: "[t]here are also situations where

306 (referring to Restatement (Second) of Conflict of Laws § 142(2)(a)). Weitz' claim is not barred by Iowa's ten-year statute of limitations, and Wausau's motion for summary judgment on this ground will, therefore, be denied.[24]

### 2. Genuine Issues of Material Fact.

#### a. Policy 1520.

##### (i) *Is Weitz an additional named insured to the 1520 policy?*

As discussed, Wausau answers this question in the negative because there is no additional insured endorsement showing Weitz as an additional named insured on the 1520 policy. Weitz has provided a certificate of insurance indicating Weitz is an additional insured for a project known as "Job: D385–21 Evergreen Woods", which specifically refers to the 1520 policy. *See* Weitz Ex. 24. Weitz argues the existence of this certificate of insurance issued by Wausau precludes granting Wausau's motion for summary judgment. To support this argument, Weitz has provided persuasive case authority wherein the court, in determining the meaning and effect of an insurance policy, construed together the main policy with a certificate of insurance which referred to the main policy. *See City of Northglenn v. Chevron. U.S.A., Inc.,* 634 F.Supp. 217, 219 (D.Colo. 1986). In another case Weitz provided, the existence of a certificate of insurance was sufficient to preclude summary judg-

ment on the issue of whether an insurance agent negligently issued a certificate of insurance indicating a defendant was an additional named insured on a policy endorsement, where the policy endorsement was never issued to the primary insured party, and the defendant was never listed as an additional named insured. *See Hegeman v. Crown Zellerbach, Inc.,* 1989 WL 30246 *1 (E.D.La. March 16, 1989).

Once Wausau shows "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,]" Weitz "may not rest on the allegations of [its] pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *See Krein v. DBA Corp.,* 327 F.3d 723, 726 (8th Cir.2003) (quoting *Stone Motor Co. v. General Motors, Corp.,* 293 F.3d 456, 465 (8th Cir.2002)) (internal citations omitted) (citing Fed.R.Civ.P. 56(e)). This Court finds that the existence of a Wausau issued certificate of insurance which specifically refers to the 1520 policy and references a phase of construction other than Phase I construction [25] does sufficiently set forth facts showing genuine issues of material facts exist related to Wausau's contention that Weitz *only* had additional insured status under the 1521 policy, but *only* for Phase I construction. Due to the nature of the insurance coverage and the nature of the claims in this case, Weitz' status as an additional insured for either phase of

---

the forum will entertain an action that is not barred by its statute of limitations even though the forum is not the state of most significant relationship to other issues." Additionally, applying Iowa's longer statute of limitations rather than Connecticut's shorter statute of limitations, the state whose substantive law applies does no violence to the Constitution. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).

**24.** While not making a specific finding, the Court sees genuine issues of material fact that could remain even if Connecticut's shorter statute of limitations was applicable.

**25.** Weitz Exhibit 24 makes reference to "Job: D385–21 Evergreen Woods". *See* Weitz Ex. 24. There is no Job: D385–21. The Phase I subcontract between Weitz and Janazzo was labeled "D385–32". The Phase II subcontract between Weitz and Janazzo was labeled "D385–D1".

construction under the 1520 policy cannot be determined as a matter of law. Wausau's motion for summary judgment on this ground must be denied.

### (ii) *Was there an injury from Phase I and Phase II construction occurring within the policies?*

Both Wausau and Weitz agree that the policy language in this case has been interpreted by Connecticut courts as being an "injury in fact" trigger of coverage. The parties disagree on whether a "manifestation" of property damage is required to occur during the dates the policy is in effect.

Wausau argues that, to the extent Weitz is an additional insured to the 1520 policy, coverage still does not exist because there was no bodily injury or property damage, as those terms are defined, that arose while policy 1520 was in effect (September 1, 1989, to September 1, 1990). Wausau interprets *Aetna Cas. and Sur. Co. v. Abbott Laboratories*, 636 F.Supp. 546 (D.Conn.1986), as requiring a manifestation of an injury in fact during a relevant insurance policy period in order for insurance coverage to exist. According to Wausau, under *Aetna*, unless property damage manifested itself while the 1520 policy was in effect, coverage under policy 1520 does not exist. *See Aetna*, 636 F.Supp. at 551. The Phase I/D385–32 subcontract between Janazzo and Weitz existed for only nine days before policy 1520 expired; and, because the allegations of property damage arising from Phase I construction all occurred after September 1, 1990, an injury in fact did not manifest itself during the 1520 policy period, and, therefore, according to Wausau, there is no coverage under the 1520 policy.

With respect to property damage arising from Phase II construction, Wausau argues that since Phase II construction commenced after the expiration of the 1520 policy, policy 1520 cannot cover problems associated with Phase II construction. Lastly, related to all of this is Wausau's insistence that the construction of Evergreen Woods took place in two distinct parts, Phase I and Phase II. By taking this position, Wausau is then able to point to the "products completed/operations hazard" exclusion contained in both policies in order to preclude coverage.[26]

Resisting Wausau's assertions, Weitz also points to *Aetna*, but reads the case as not requiring a manifestation of an injury in fact during a relevant policy period in order for insurance coverage to exist. Weitz points out that in *Aetna*, the District Court of Connecticut rejected arguments made by the insurers similar to the position Wausau forwards here. The *Aetna* court pointed out the Second Circuit has emphasized "that an injury need not have become 'diagnosable' or 'compensable' in order to constitute an 'injury in fact'"; instead, "a real but undiscovered injury, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became [diagnosable]." *Aetna*, 636 F.Supp. at 549. Thus, Weitz asserts an "injury" should not be construed to mean "manifestation of injury." Weitz argues the alleged property damage to Evergreen Woods began with the alleged defective design and alleged negligent design review of the HVAC system. According to Weitz, the true "injury in fact" to the Evergreen Woods project occurred, at least potentially, when the allegedly inadequate HVAC system was designed and, subsequently, when Weitz and/or Janazzo allegedly acted negligently in reviewing designs and failed

---

26. *See* footnote 5.

to point out the design defect. Weitz argues these alleged acts and omissions of Weitz set in motion a chain of events that included constructing Evergreen Woods according to the allegedly defective plans, ultimately leading to the property damage Shoreline claimed. According to Weitz, at a minimum, the factual allegations contained in the underlying Shoreline complaint can be construed as asserting claims that the damage to the property actually occurred beginning with the pre-construction, drawing-board stage of the project. Weitz points to supportive authority and takes the position that design defects in a construction project, or a contractor's alleged failure to disclose such defects, qualify as "injury in fact", and when all of Shoreline's allegations from the Phase II arbitration and Phase I. litigation are reviewed, Weitz' alleged inadequate review of the deficient HVAC designs is an "occurrence" within the meaning of the policies and is also the point at which Shoreline was "injured in fact".[27] Weitz argues Shoreline's claims are similar to the claims asserted against the general contractor in *CU Lloyd's of Texas v. Main Street Homes Inc.*, 79 S.W.3d 687 (Tx.Ct.App. 2002), a case where the underlying allegations in multiple homeowner suits were found to potentially fall within the scope of coverage, thus triggering the insurer's duty to defend the general contractor. *See CU Lloyd's of Texas*, 79 S.W.3d at 698.

In *CU Lloyd's of Texas*, one petition against the general contractor alleged that the general contractor, despite knowing that "foundation designs 'were totally inap-propriate' for the soil conditions" and despite learning from soil tests "[that the original foundation designs were not going to work][,] constructed the homes pursuant to the original ... slab designs." *CU Lloyd's of Texas*, 79 S.W.3d at 693–94. In the other petition against the general contractor, the general contractor was alleged to be "aware, prior to the construction of the foundations ... that the slabs as designed would be inadequate" and, despite this knowledge, failed to disclose this to the homebuyers. *Id.* at 694. In that case, the insurance company argued "that there was no duty to defend because the underlying suits ... did not allege an 'occurrence' and, alternatively, that the policies' business-risk exclusions applied." *Id.* at 690. A "products-completed operations hazard" definition existed in the insurance policy which, unlike the instant case, the general contractor argued favored its motion for summary judgment because the "underlying petitions contained allegations of covered occurrences and allegations falling within the 'products-completed operations hazard' clause of the policies." *Id.* at 691. The court ultimately held "that the pleadings in each underlying suit allege[d] an 'occurrence' that would trigger [the insurance company's] duty to defend under the policy[,]." *Id.* at 698. Under *CU Lloyd's of Texas*, Weitz argues a factual issue exists on whether the pleadings allege "property damage" arising out of an "occurrence" as defined in the policies triggering coverage under one or both Wausau policies. Similar to cases where courts have found that continuous and progres-

---

27. Weitz points to exhibits from the Phase I Connecticut state court which indicate Weitz was reviewing the HVAC system drawings and specifications in January and March of 1990. *See* Weitz Brief in Resistance at 21 (referring to Weitz Ex. 1, Strutt Aff. ¶ 11, discussing Phase 1 lawsuits Ex. B32 and I31, located at Weitz App. 8 and 12, respectively).

Additionally, Weitz points to documents dated January 19, 1990, and October 16, 1991, as indicating Weitz was engaged in allegedly negligent design reviews with respect to Phase II of the project during the existence of both Wausau policies. *See* Weitz Ex. 1, Strutt Aff. ¶ 14, (referring to App. 19–25).

sive injuries caused by defective design and construction have been found to have occurred during relevant policy periods, Weitz asserts the actual injury in fact at Evergreen Woods occurred while both Wausau policies 1520 and 1521 were in effect, activating Wausau's obligations of defense and indemnity. *See Century Indem. Co. v. Roy Hearrean,* 98 Cal.App.4th 734, 120 Cal.Rptr.2d 66, 72 (2002) (examining continuous and progressive injuries to hotel property arising out of defective designs and construction and determining insurance coverage was triggered because there had been an injury occurring during the policy period). Combined with its interpretation of *Aetna* then, Weitz argues these facts demonstrate the injury in fact could have occurred during the time period both Wausau policies were in effect, and coverage under the Wausau policies, therefore, exists.

Lastly, to refute Wausau's assertion that Evergreen Woods was constructed in two separate and distinct parts, Weitz points to the record and argues that, although classified in two different phases, the construction of Evergreen Woods was a single event, built in separate phases as the money became available. Moreover, Weitz reminds the Court that Phase II was arbitrated and Phase I was litigated because an arbitration clause existed in the Phase II general contract agreement but not in the Phase I agreement.

█ This Court agrees that *Aetna* does not require a manifestation of an injury to occur during the period of time a commercial general liability insurance policy is in effect in order for said injury to be covered under the policy. *See Aetna,* 636 F.Supp. at 548–49 (discussing *American Home Products Corp. v. Liberty Mut. Ins. Co.,* 748 F.2d 760, 765 (2d Cir.1984), wherein the Second Circuit concluded that "injury" did not mean "manifestation of

injury", a conclusion the *Aetna* court followed.). Under Connecticut law, an insurer's duty to defend is "much broader in scope and application than its duty to indemnify, ... [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.,* 287 F.3d 242, 245–46 (2d Cir.2002) (quoting *Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co.,* 247 Conn. 801, 724 A.2d 1117, 1120 (1999)) (internal quotation marks and citations omitted). "[I]f an allegation of a complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Id.* at 246 (quoting *Imperial Cas. and Indem. Co. v. State,* 246 Conn. 313, 714 A.2d 1230, 1236 (1998)) (emphasis in original); *see also Schwartz v. Stevenson,* 37 Conn.App. 581, 657 A.2d 244, 247 (1995) (indicating that the duty to defend depends on whether the complaint "stated facts which *appeared* to bring" the "claimed injury within the policy coverage.") (emphasis in original).

█ Genuine issues of material fact exist regarding whether the property damage that occurred at Evergreen Woods occurred when either policy was in effect. Whether this Court focuses on the definition of an "occurrence" contained in both policies, or the "products completed/operations hazard" language of both policies, the coverage issues involved in this case cannot be determined as a matter of law at this time. The nature of Shoreline's claims, the circumstances surrounding the procurement of the Wausau policies, the language of the policies themselves, and determining whether Shoreline's claims in the arbitration and litigation could potentially result in coverage thus triggering the

duty to defend, requires the determination of multiple genuine issues material fact, precluding summary judgment.

## CONCLUSION

Based upon the foregoing analysis, Wausau's Motion for Summary Judgment (Clerk's No. 36) is denied in full.

**IT IS SO ORDERED.**